IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WHOLESALE FIREWORKS, CORP., ET AL.,

        Plaintiffs,

v.

WHOLESALE FIREWORKS ENTERPRISES, LLC,

        Defendant.

20cv0796
ELECTRONICALLY FILED

**MEMORANDUM ORDER**

Before the Court are supplemental briefs filed by each of the Parties to this action. ECF 98 and ECF 99. This Court requested said supplemental briefs after the United States Court for the Third Circuit indicated in analyzing Defendant's request for attorneys' fees under the Lanham Act, this Court must consider whether, "'there [was] an unusual discrepancy' between the merits of the winning and losing party's positions, and whether the losing party 'litigated … in an "unreasonable manner."'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) (*quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014))." ECF 89-2. Thus, the Court requested each party file a supplemental brief in support of its respective position, and the matter is now ripe for adjudication.

**I. Factual and Procedural Background**

Plaintiff brought the instant lawsuit against Defendant in the Northern District of Ohio on January 17, 2020. ECF 1. The lawsuit alleged that Defendant engaged in unfair competition, unfair competition and deceptive trade practices under the Ohio revised code, trade dress infringement under section 43(a) of the Lanham Act, and common law unfair or deceptive trade

practices and unfair competition.  ECF 1-3.  On March 16, 2020, the day before COVID-19 shut down the United States, Defendant filed a Motion to Dismiss for Lack of Jurisdiction and an Answer.  ECF 11 and ECF 12.

Plaintiff filed an Amended Complaint on April 6, 2020.  ECF 21.  Defendant filed a Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction and Improper Venue on April 16, 2020.  ECF 23 and ECF 24.  On May 29, 2020, the United States District Court for the Northern District of Ohio denied Defendant's Motion to Dismiss but transferred the case to this Court.  ECF 36.

This Court held an initial case management conference on July 8, 2020, via zoom video conference.  ECF 52 and ECF 57.  Following the conference, the Plaintiff filed a Second Amended Complaint on September 30, 2020, essentially seeking to enjoin Defendant from using the phrase "wholesale fireworks."  ECF 63.  On October 23, 2020, Plaintiff filed a Motion to Dismiss its Second Amended Complaint, "without prejudice, each party to bear their respective costs" pursuant to Rule 41(a)(2) and a proposed Order for this Court to sign.  ECF 71 and ECF 72.  The Court did so.[1]  ECF 73.

On November 11, 2020, Defendant filed a Motion for Reconsideration, asking this Court to either: (1) modify its previous Order to include attorney's fees and costs, or (2) amend its previous Order to a dismissal with prejudice.  ECF 74.  This Court granted Defendant's motion in part, deciding to dismiss Plaintiff's Second Amended Complaint with prejudice, thereby precluding Plaintiff from reinitiating this lawsuit, but ordered each party is to bear its respective costs of this litigation.  ECF 76.

---

[1] As a result of the dismissal of the Second Amended Complaint, the Parties agree that for purposes of adjudicating the attorneys' fees issue, Plaintiff is the losing party and Defendant the prevailing party.

On November 20, 2020, Defendant filed a Motion for Attorneys' Fees (ECF 77) and Plaintiff opposed same. ECF 80. This Court denied Defendant's Motion for Attorneys' Fees by Memorandum Order on December 7, 2020. ECF 81.

Defendant, dissatisfied with this outcome, appealed this Court's decision to the United States Court of Appeals for the Third Circuit. ECF 82. As noted above, upon review, the Court of Appeals remanded the matter back to this Court, instructing this Court to consider whether Defendant was entitled to attorney's fees under the Lanham Act, specifically, whether there was an unusual discrepancy between the merits of the winning and losing party's positions, and whether the losing party litigated in an unreasonable manner. ECF 89-2.

Upon remand, after unsuccessfully mediating the matter, the Court ordered the parties to file briefs on the discreet issue outlined by the Court of Appeals for the Third Circuit.

## II. Discussion of Attorney Fees under the Lanham Act

Count I of Plaintiff's Second Amended Complaint (ECF 63) asserted a claim for relief under the Lanham Act, 15 U.S.C. §1125(a)(1)(A). This section of the Act reads as follows:

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> \*   \*   \*
>
> . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125.

The Lanham Act allows a prevailing party to be awarded attorneys' fees as follows:

> (a) Profits; damages and costs; attorney fees
> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits[,] the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C.A. § 1117. Notably, the statute fails to define "exceptional cases." *See, e.g., Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir. 1991) ("We are persuaded by the line of cases holding that a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as 'exceptional.'"); *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 274 (3d Cir. 2000) (finding a court may award attorneys' fees where the losing litigant has committed some other culpable conduct, for instance, misconduct during the course of litigation).

More recently than either of the trademark cases (noted immediately above), interpreting when attorneys' fees should be paid pursuant to the Lanham Act, the United States Supreme Court, in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545 (2014), analyzed

when a district court could award attorney's fees under § 285 of the Patent Act. The Supreme Court in *Octane* held, ". . . today, a district court may award fees in the rare case in which a party's unreasonable conduct -- while not necessarily independently sanctionable -- is nonetheless so 'exceptional' as to justify an award of fees." 572 U.S. at 555. The *Octane* Court further held, that "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.*

Following the Supreme Court's decision in *Octane,* the Court of Appeals for the Third Circuit held that the attorneys' fees decision in *Octane* would also apply to Lanham Act cases, and thus, would not be limited to the Patent Act. *See, Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3rd Cir. 2014) ("While *Octane Fitness* directly concerns the scope of a district court's discretion to award fees for "exceptional" case under § 285 of the Patent Act, the case controls our interpretation of § 35(a) of the Lanham Act."). Accordingly, the Court of Appeals determined in *Fair Wind* that a district court could find a case "exceptional," (and, therefore, award fees to the prevailing party), "when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Id.,* at 315.

The Supreme Court in *Octane* also instructed that the prevailing party must prove, by a preponderance of the evidence, that it is entitled to recover attorneys' fees. 572 U.S. at 557. The Court of Appeals decision in *Fair Wind* concluded nothing to the contrary.

The Court of Appeals in *Fair Wind* further defined an "exceptional" case as:

> . . . [O]ne that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *[Octane]* at 556. Thus, it is within a court's discretion to find a case "exceptional" based upon "the governing law and the facts of the case," irrespective of whether the losing party is culpable. For

5

example, "a case presenting . . . exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* This is so even if the losing party's conduct did not suggest "bad faith, fraud, malice, [or] knowing infringement." *Green,* 486 F.3d at 103.

*Fair Wind,* 764 F.3d at 314.

In addition to the above-cited Third Circuit law which controls and guides this Court in determining whether the instant case presents as "exceptional" to determine if attorneys' fees are appropriate, the United States Court of Appeals for the Federal Circuit recently examined a case similar to the instant matter wherein the Federal Circuit matter was not fully adjudicated. As is the situation before this Court, the Court of Appeals for the Federal Circuit had to determine whether its case was "exceptional," thereby entitling the "prevailing party" to attorneys' fees, even though its case had not been fully adjudicated.

In *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020), the Court of Appeals for the Federal Circuit stated:

> This case represents "an unusual basis for fees," in that the district court's exceptional-case determination rests on an examination of issues -- trademark infringement, trade dress validity, and patent validity -- that were not fully litigated before the court. *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356–57 (Fed. Cir. 2019). That fact alone, however, would not create a basis to deny a fee motion. In *Thermolife*, for example, we held that it was not an abuse of discretion to award attorney's fees to the defendant in light of the plaintiff's failure to conduct an adequate presuit infringement investigation, even though the infringement question had not been adjudicated before the asserted claims were held unpatentable. *Id.* We at the same time also made abundantly clear that district courts have wide latitude "to refuse to add to the burdens of litigation by opening up issues that have not been litigated but are asserted as bases for a fee award." Id. at 1357 (citing *Spineology, Inc. v. Wright Med. Tech., Inc.*, 910 F.3d 1227, 1230 (Fed. Cir. 2018)). But when the bases of an attorney's fee motion rest on issues that had not been meaningfully considered by the district court, as is the case here, "a fuller explanation of the court's assessment of a litigant's position may well be needed when a district court focuses on a freshly considered issue than one that has already been fully litigated." *Id.*

6

*Munchkin, Inc.*, 960 F.3d at 1378. The Court of Appeals for the Federal Circuit further noted that a district court must "provide a concise but clear explanation of its reasons for the fee award." *Id., citing Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In its case, the Court of Appeals ultimately determined that the district court erroneously determined that the *Munchkin* case was exceptional, finding that the district court's opinion failed to support the conclusion that Munchkin acted unreasonably in choosing to defend the validity of its patent. *Id.,* at 1378–79.

Applying all of the above law to the instant case, this Court must consider whether: (1) an unusual discrepancy in the merits of the positions taken by the parties to this case exist; and (2) the losing party litigated this case in an unreasonable manner. To determine whether an "unusual discrepancy" exists between the merits of the positions of Plaintiff and Defendant in this case, this Court must consider whether this case "stands out from others with respect to the substantive strength of a party's litigating position," considering both the governing law and the facts of the case. Finally, as suggested by *Munchkin, supra.,* which this Court finds instructive, this Court will not simply deny Defendant's request for attorneys' fees merely because matters were not fully litigated before this Court. Similarly, this Court will not simply grant Defendant's request for attorneys' fees merely because Plaintiff asked the Court to dismiss this case, thereby arresting the full adjudication of the matters. As a result, this Court will meaningfully consider the bases of Defendant's attorneys' fee motion, even though the bases rest on issues that were not adjudicated, and will determine if Defendant met its burden of proving that: (1) an unusual discrepancy in the merits of the positions taken by the parties to this case exists; and (2) Plaintiff litigated this case in an unreasonable manner.

**1. Based on the governing law and facts presented in this case, the Court finds that no unusual discrepancy in the merits of the positions taken by the parties to this litigation exist.**

Turning now to the arguments before this Court, the Court notes that both Plaintiff and Defendant agree that Defendant in the instant matter is the prevailing party, and as such, bears the burden of proving that it is entitled to recover attorneys' fees.  See ECF 98 and ECF 99.  Defendant must do so by a preponderance of the evidence standard.  *Octane*, *supra.*  Defendant did not specifically identify whether it believed: (a) there was an unusual discrepancy in the merits of the positions taken by the parties, or (b) the losing party [*i.e.,* Plaintiff] litigated the case in an unreasonable manner.  However, Defendant provided numerous arguments which could fall into either (or both) categories, and the Court has carefully considered each one.  Thus, this Court will consider both options as a potential basis for Defendant's assertion that it is entitled to attorneys' fees.

Defendant (hereinafter "Wholesale Fireworks Enterprises" or "WFE") first suggests that it is entitled to attorneys' fees because the phrase "wholesale fireworks" is generic and common in nature, and thus, not entitled to trademark protection.

The Court of Appeals for the Third Circuit has determined that marks (in order to be deemed protectable as trademarks) are divided into four classifications: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 221 (3d Cir. 2000), *citing Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Arbitrary or fanciful marks use terms that neither describe nor suggest anything about the product and they bear no logical relation to the actual characteristics of the goods – for example, "KODAK" – while suggestive marks require consumer imagination, thought, or perception to determine what the product is – for example, "COPPERTONE." *Id*. at

221-22. Descriptive terms convey an immediate idea of the ingredients, qualities, or characteristics of the goods – for example "SECURITY CENTER" – while generic marks function as the common descriptive name of a product class – for example, "DIET CHOCOLATE FUDGE SODA." *Id*. at 222. In order to qualify for Lanham Act protection, a mark must be suggestive, arbitrary, or fanciful, or descriptive (with a demonstration of secondary meaning), while generic marks receive no protection, as they are not considered to be "trademarks" at all. *Id*.

WFE argues that the phrase "wholesale fireworks" is widely used in the fireworks industry and is generic considering the products being sold. ECF 99, p. 9, 11,13. WFE argues that Plaintiff (hereinafter "Wholesale Fireworks Corp." or "WFC") used the phrase, "wholesale fireworks," in its name for the same reason WFE did – to describe to customers "what you do and how you do it" which is permitted by the Lanham Act. Id. at p. 11. WFE cited to its deposition of WFC's 30(b)(6) witness in support of this specific contention (Id. at p. 9), and relied upon case law from the United States Court of Appeals for the Seventh Circuit, which determined that the legal entity with the marks "Warehouse Shoes" and "Shoe Warehouse" could not enjoin "DSW Shoe Warehouse" stores from using the DSW Shoe Warehouse name and mark in the greater Milwaukee area. *See Mil-Mar Shoe Co. v. Shonac Corp.,* 75 F.3d 1153, 1155-56 (7th Cir. 1996).

In addition to claiming that WFC could not, and should not, have brought its Lanham Act claim due to the generic nature of the phrase "wholesale fireworks," WFE also argues that it did not attempt to pass-off its products as those belonging to WFC.

The Court agrees in part, and disagrees in part, with WFE's arguments. On the surface, "wholesale" anything seems generic in nature. Thus, the phrase "wholesale fireworks" seems to

be too generic to warrant protection under the Lanham Act. However, WFC and WFE are nearly identical corporate names – "Wholesale Fireworks, Corp." and "Wholesale Fireworks Enterprises, LLC" – and these two names indisputably were, and are, easily confused, not only by new, potential customers, who have never purchased fireworks from either entity, but by Plaintiff's longstanding customers who had business relationships with Plaintiff throughout the years. The documentation attached to Plaintiff's Second Amended Complaint proves as much. See ECF 67.

Contrarily, WFE argues that it never "passed off" its own products as those belonging to WFC. Id. Additionally, WFE contends that its signage, logos, marketing materials, and web domains were, and are, so different from those belonging to WFC, that there was no objectively reasonable basis upon which WFC should have asserted a Lanham Act claim. Id. at p. 13-14.

Plaintiff, WFC, asserts that its Second Amended Complaint established a *prima facie* case for a claim of unfair competition under the Lanham Act. WFC's pleading alleged that WFE, by using the words, "wholesale fireworks," falsely associated its products with those of WFC, passing off its goods as those of WFC. ECF 63, para. 25. WFC claimed that WFE's use of the phrase "wholesale fireworks" – including use of the block-style lettering of the words "wholesale fireworks" in its communications – caused confusion and mistake, so as to deceive WFC's current and potential customers as to the origin of the fireworks it was selling. Id., para. 26-28. More specifically, WFC claimed that WFE distributed internet and paper coupons to WFC's existing and potential customers in Ohio, Pennsylvania, and West Virginia, which offered discount pricing on fireworks, and when customers tried to redeem the coupons with WFC and were denied, harm to WFC's business and reputation ensued. As yet further evidence of "confusion," WFC provided additional examples in its Second Amended Complaint, and the

10

documents it attached to same, illustrating how WFE's use of the phrase "wholesale fireworks" confused not only customers, but marketing and publicity companies, as well as journalists. For example, WFC indicated that iHeart Radio agency mistakenly sent WFE invoices to WFC; and an online newspaper article confused WFE's retail location in North Huntington, Pennsylvania with WFC's business in Ohio. See ECF 63, para. 20-21, and ECF 67.

Based on the overall content of these exhibits and examples provided by WFC, the Court finds that these facts and other examples of confusion set forth in the Second Amended Complaint (and in the documents attached thereto at ECF 67), provide an adequate basis, illustrative of (at a minimum) confusion, and at its worst, an attempt at passing off. Notably, the Court finds the document wherein the Tribune-Review news reporter indicated that no one from WFE attempted to correct the journalist's mistake in terms of identifying the incorrect "wholesale fireworks" entity, particularly conclusive on the passing off issue. Based on the documentation presented and WFC's allegations set forth in its Second Amended Complaint which are supported by this documentation, the Court concludes that WFC's claims under the Lanham Act were properly asserted, and that a *prima facie* case for same was adequately pled. Because this case was not adjudicated beyond the pleading stage, the Court finds this determination to be enough to deny WFE's request for attorneys' fees, because the Court does find that there is an unusual discrepancy between the merits of the party's respective positions. As noted by the law governing this topic, this Court has discretion to determine whether this case "exceptional" based upon "the governing law and the facts of the case," irrespective of whether the losing party – in this case, WFC – is culpable.

Simply stated, because this Court finds that the facts, as presented by WFC in its Second Amended Complaint and the documents attached to that complaint at ECF 67, support a viable

Lanham Act claim, and because this case was concluded during the pleading stage, the Court finds nothing "exceptional" about WFC asserting a Lanham Act claim with the hope of enjoining WFE from utilizing the phrase "wholesale fireworks" to stop confusion.

**2. Plaintiff, as the losing party, did not litigate this case in an unreasonable manner.**

Turning next whether WFC litigated this case in an unreasonable manner, this Court finds that WFC litigated this case in a reasonable manner for all the same reasons set forth above, in sub-part "1." It is clear to this Court from the record – while noting that this is a largely undeveloped record – that WFE used block-styled lettering to form the phrase "wholesale fireworks" with the hope and goal of passing off itself, and its products, as WFC, and WFC products. Thus, WFC reasonably pursued a remedy through its Lanham Act claim.

Additionally, it is important to note that when WFC brought this lawsuit, fireworks sales across the country were "normal." Shortly after bringing the lawsuit, COVID-19 shut down the country and only outdoor gatherings, where social distance could be observed, were permitted, eventually leading to a spike in the overall sales of all fireworks in the country. WFC has provided evidence of these facts. See ECF 98, p. 11, ECF 98-3, and ECF 98-4. As a result of what this Court could call a fireworks "boom" (referring to the increase in sales), months after the lawsuit incepted, WFC determined it could no longer prove any substantial damages caused by WFE's attempt(s) to pass off its products as those of WFC, and WFC recognized it had to dismiss this case. Accordingly, the Court finds that WFC's swift action once it determined it could prove no real damages, purely due to outside circumstances (*i.e.,* the effects of the global COVID-19 pandemic), which affected the entire fireworks industry within the United States, further illustrates the reasonableness of WFC regarding its decision to pursue and then abruptly end its pursuit, of this litigation.

Moreover, from January 17, 2020, the date when Plaintiff initiated the instant lawsuit (originally filed in the United States District Court for the Northern District of Ohio), seeking to enjoin Defendant from using the phrase "wholesale fireworks," to October 23, 2020, the date plaintiff asked this Court to dismiss the instant lawsuit, approximately 10 months elapsed. As noted in subpart "1.," above, WFC brought a bona fide Lanham Act claim in January of 2020, and due to completely unforeseeable circumstances surrounding the impact and ripple effect of the global pandemic, WFC withdrew its claim in October of 2020. This Court can only find that WFC litigated this matter in the most reasonable manner possible.

**III. Conclusion**

In light of the foregoing authority and the facts presented by the parties herein, the Court hereby DENIES Defendant's request to deem this case "exceptional" under the Lanham Act (15 U.S.C. 1117(a)) and accordingly, DENIES Defendant's request for attorneys' fees as set forth in its supplemental briefing on this matter. ECF 77, ECF 89-2, and ECF 99.

**SO ORDERED**, this 5th day of May, 2022.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge